# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KENNY ALLEN MEADOR,

     Petitioner,              Civil No. 5:14-12760
                                    HON. JOHN CORBETT O'MEARA

v.

PAUL KLEE,

     Respondent,

_____/

## OPINION AND ORDER ON REMAND DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

This matter is on remand from the United States Court of Appeals for the Sixth Circuit. Kenny Allen Meador, ("petitioner"), incarcerated at the Alger Correctional Facility in Munising, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for conducting a criminal enterprise, M.C.L.A. 750.159i(1), two counts of first-degree home invasion, M.C.L.A. 750.110a(2), three counts of receiving and concealing stolen property with a value of $1,000 but less than $20,000, M.C.L.A. 750.535(3)(a), two counts of possession of a firearm during the commission of a felony, M.C.L.A. 750.227b, and being a third habitual offender, M.C.L.A. 769.11.

1

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Saginaw County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case involves the break-ins of three homes in Saginaw County: (1) the Parker residence on Swan Creek Road on February 18, 2008; (2) the Kangas residence on Marquette Street on February 24, 2008; and (3) the Rodriguez residence on North Clinton Street on March 11, 2008. All three break-ins occurred during the day. Among the items taken were five guns, including a .357 caliber revolver and a .40 caliber pistol, and two gold coins from the Parker house, a digital camera from the Kangas house, and a wedding band set, a flat screen television, and a gun from the Rodriguez house.
>
> On February 18, 2008, at approximately noon, Cara Mackley, a resident of Swan Creek Road, drove past the Parker house and saw a dark-colored Grand Am in the driveway. Also on February 18, Joe Overstreet, owner of the International Coin Exchange, bought two gold coins from defendant. The two coins had been taken from the Parker residence.
>
> At night on February 18, 2008, members of the Saginaw Gang Task Force stopped a vehicle occupied by Peter Escobedo and Rolando Santoya. Before the vehicle stopped, Santoya tossed a .357 caliber revolver out the driver's side rear window. Santoya testified that he got the gun, which had been taken from the Parker residence, from Joe Gawthrop earlier that evening in the West Genesee Market parking lot. According to Santoya, Gawthrop arrived in the parking lot as a passenger in a dark-colored Grand Am.
>
> In February 2008, a detective with the Saginaw Township Police

Department was investigating a series of home invasions, for which defendant had become a suspect. The detective learned that defendant was staying in local motels with Stephanie Mazur and Eric Torrez, and that on February 25, defendant and Mazur planned to move out of the Super 8 motel. The detective set up surveillance. He saw defendant walk out of the motel, go to a Grand Am, take an item from the trunk, and throw the item into a drainage ditch. After defendant left the area, the detective retrieved the item; it was the digital camera that had been taken from the Kangas residence. The detective went inside the motel with the intent to search defendant's room. He ran into Eric Torrez, who ran when confronted. While running, Torrez dropped a .40 caliber pistol. The pistol had been taken from the Parker residence.

On March 11, 2008, Amanda Nickles, who lived across the street from 2433 North Clinton Road, was washing dishes when she saw a dark blue Grand Am pull into the driveway of the Rodriguez residence. There were four people in the car. A female, who was driving, stayed in the car, while the other three, at least two of whom were males, got out of the car. One went to the back of the house, one went to the front door and knocked, and the third stayed by the car. The one that went to the back of the house then opened the front door. Nickles saw them carry a television and two jewelry boxes out of the house. Nickles did not call 911, but she wrote down the license plate number to the Grand Am. When Diana Rodriguez came home, Nickles told Rodriguez what she had seen and she then gave the license plate number to the police. After an officer "played" with the number, [1] the officer learned that the Grand Am was registered to a person living at 4077 Green Street. The officer went to the address, where he had contact with a relative of Mazur.

According to Sherry McQuiston, an employee of the Saginaw Gold and Diamond Center, defendant and Mazur came into the store to sell jewelry on March 11, 2008. Pursuant to an earlier request from the Saginaw Township Police Department, she asked her boss to alert the police of defendant's presence at the store. McQuiston tried to stall defendant and Mazur, but the two left the store without selling any jewelry. However,

---

[1] Nickles had substituted an "O" or a "0" for a "Q." (Footnote original).

3

after defendant and Mazur walked to a dark-colored Grand Am, the police followed defendant and Mazur out of the store's parking lot.

A marked patrol vehicle initiated a traffic stop of the Grand Am. Defendant and Mazur were placed in the back of the patrol vehicle, while the Grand Am was searched. A pry bar and a set of gloves were found in the trunk. Defendant and Mazur were transported to the police station, where each was interviewed. During her interview, Mazur handed the interviewing officer the wedding band set that had been taken from the Rodriguez residence.

Mazur testified that for a time in early 2008 defendant was her boyfriend and that defendant would sometimes drive her car, a Grand Am, while she worked during the day. She and defendant stayed at hotels. Defendant would often have his friends, including Eric Torrez, Mikey Torrez, and Gawthrop, stay in other rooms.

According to Mazur, on March 11, 2008, she drove defendant, Mikey Torrez, and Gawthrop to the Rodriguez residence. She drove there under Gawthrop's direction. She believed that Gawthrop's ex-girlfriend lived there, and that Gawthrop was going to retrieve his possessions. At the house, Mazur stayed in the car, while the three men got out. Gawthrop walked to the back of the house, and a few minutes later he let defendant and Mikey Torrez into the house through the garage door. The three men exited the house, each carrying something. Defendant carried two jewelry boxes, Mikey Torrez carried a flat screen television, and Gawthrop had a gun. It was then that Mazur realized the three men had burglarized the house.

Mazur dropped Mikey Torrez and Gawthrop off, before she and defendant went to the Saginaw Gold and Diamond Exchange, where defendant unsuccessfully tried to sell some jewelry. After she and defendant left the store, they were pulled over. They were placed in the back seat of a patrol vehicle. Defendant had given Mazur a wedding band set taken from the Rodriguez house. While in the patrol vehicle, defendant first told Mazur to tell the police that she had gotten the wedding band set from Gawthrop and then he told her to swallow the rings.

4

*People v. Meador*, No. 292776, 2011 WL 165411, at * 1–3 (Mich. Ct. App. Jan. 18, 2011).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 489 Mich. 935, 797 N.W.2d 630 (2011).

In 2012, petitioner filed a petition for writ of habeas corpus. Petitioner later moved to hold the petition in abeyance so that he could return to the state courts to exhaust additional claims. This Court denied the motion to stay and hold the petition in abeyance on the ground that petitioner still had time remaining under the one year limitations period to file a state post-conviction motion and return to the federal court. The Court gave petitioner thirty days to decide whether he wished to proceed only with his exhausted claims or move for a non-prejudicial dismissal of his petition. *Meador v. Rapelje*, No. 5:12-CV-10460, 2012 WL 4341063, at *1 (E.D. Mich. Sept. 21, 2012).

On October 17, 2012, petitioner moved to withdraw his petition without prejudice. On October 24, 2012, this Court summarily dismissed the petition without prejudice. (5:12-CV-10460, Dkt. # 10).

Petitioner filed a post-conviction motion for relief from judgment with the Saginaw County Circuit Court, which was denied. *People v. Meador,* No. 08-030703-FH (Saginaw Cty. Cir. Ct., Feb. 11, 2013); *reconsideration den.* No. 08-

030703-FH (Saginaw Cty. Cir. Ct., Mar. 12, 2013). The Michigan appellate courts denied petitioner leave to appeal. *People v. Meador,* No. 316353 (Mich.Ct.App. Dec. 27, 2013); *lv. Den.* 496 Mich. 859, 847 N.W. 2d 631 (2014).

On June 29, 2014, petitioner filed the current petition for writ of habeas corpus.

This Court granted respondent's motion to dismiss and dismissed the petition pursuant to the one year limitations period found in 28 U.S.C. § 2244 (d)(1). *Meador v. Klee,* No. 5:14-12760, 2015 WL 806990 (E.D. Mich. Feb. 26, 2015).

The Sixth Circuit reversed this Court's opinion and order of summary dismissal, finding that the instant petition was timely filed. The Sixth Circuit remanded the matter to this Court for a decision on the merits. *See Meador v. Klee,* No. 15-1329 (6th Cir. Mar. 23, 2016).

On May 5, 2016, this Court reopened the case to the Court's active docket and ordered respondent to file an answer addressing the merits of the petition. A supplemental answer was filed on September 1, 2016. Petitioner filed a reply brief on October 11, 2016.

In his current petition, petitioner seeks relief on the following grounds:

I. Defendant's defense was unfairly prejudiced when the prosecutor added several new names to its' witness list a few days before trial,

6

without leave of the court or on good cause shown. Alternatively, trial counsel was ineffective for failing to object to the introduction of those witnesses at trial, and for failing to request a continuance so as to have an opportunity to investigate them prior to trial.

II. The 144 hour delay between defendant's detention after a warrantless arrest, and his probable cause arraignment violated his Fourth Amendment rights under the U.S. Constitution. Alternatively, his trial counsel was ineffective for failing to object to the pre-arraignment delay, which resulted in excludable evidence being admitted against defendant.

III. Appellate counsel's decision not to raise the issues herein denied defendant the effective assistance of counsel, satisfying the good cause an actual prejudice strictures of MCR 6.508(D)(3)(a-b).

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

7

Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III.  Discussion

### A.  Claim # 1.  The amended witness list/ineffective assistance of trial counsel  claim.

Petitioner first claims that he was unduly prejudiced when the prosecutor was permitted to amend his witness list a few days prior to trial, in violation of M.C.R. 6.201(A)(1), which indicates that a witness list may be amended without the leave of the trial court no later than 28 days before trial.  Petitioner also claims that trial counsel was ineffective for failing to object to the untimely amendment of the witness list or for failing to request a continuance in order to investigate these additional witnesses.

Respondent contends that petitioner's first claim is procedurally defaulted, because he raised it for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise the claim in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a

9

judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise his first claim on his direct appeal as their rationale for rejecting his post-conviction claim. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claim. *Id.*

The trial judge initially noted in his post-conviction order that pursuant to

10

M.C.R. 6.508(D)(3) a court can not grant post-conviction relief to a criminal

defendant for claims that could have been raised on appeal unless the defendant

can show cause and prejudice for failing to raise the claims on his or her direct

appeal, *People v. Meador,* No. 08-030703-FH, * 2 (Saginaw Cty. Cir. Ct., Feb. 11,

2013). The trial court, however, rejected petitioner's first claim on the merits

without mentioning M.C.R. 6.508(D)(3) or petitioner's failure to raise the claim

on his direct appeal as the basis for rejecting the claim. *Id.,* * 3.

The trial judge's opinion is ambiguous about whether or not he invoked

M.C.R. 6.508(D)(3) to reject petitioner's first claim.

Moreover, petitioner claims that his appellate counsel was ineffective for

failing to raise his claim in his appeal of right. (See Claim # 3, *infra*). Ineffective

assistance of counsel may establish cause for procedural default. *Edwards v.

Carpenter*, 529 U.S. 446, 451-52 (2000). If petitioner could show that he received

ineffective assistance of appellate counsel that rose to the level of a Sixth

Amendment violation, it would excuse his procedural default for failing to raise

his claim on his direct appeal in the state courts. *Seymour v. Walker*, 224 F. 3d

542, 550 (6th Cir. 2000). Given that the cause and prejudice inquiry for the

procedural default issue merges with an analysis of the merits of petitioner's

defaulted claim, it would be easier to consider the merits of this claim. *See*

11

*Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). Additionally,

petitioner could not have procedurally defaulted his ineffective assistance of

appellate counsel claim, because state post-conviction review was the first

opportunity that he had to raise this claim. *See Guilmette,* 624 F. 3d at 291.

Because "the procedural default issue raises more questions than the case

on the merits," this Court will assume, for the sake of resolving the first claim,

that there is no procedural default by petitioner and will decide the merits of the

claim. *See Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich.

2003)(internal quotation omitted).

Petitioner initially claims that the prosecutor prejudiced his defense by

filing an amended witness list only a few days prior to trial, in which he added the

names of several additional witnesses. Only four of those witnesses actually

testified at trial.

Rolando Santoya had been one of petitioner's co-defendants, who testified

at trial in exchange for a plea agreement. Mr. Santoya testified that he purchased

a gun from Joe Gawthrop earlier that evening in the West Genesee Market parking

lot. According to Santoya, Gawthrop arrived in the parking lot as a passenger in a

dark-colored Grand Am. Significantly, although Mr. Santoya believed that

petitioner was with Mr. Gawthrop, he admitted that he could not be sure that

12

petitioner was present at the time that Mr. Santoya purchased the gun from Mr. Gawthrop.  Mr. Santoya, in fact, admitted that he never saw petitioner inside of the car during the transaction. (Tr. 4/23/09, pp. 104-06).  Mr. Santoya later denied going with petitioner to commit a home invasion. (*Id.,* p. 112). [2]

Mr. Santoya was cross-examined about the fact that he did not tell the police about the facts that he testified to in his first statement to the police.  Mr. Santoya was also confronted with the fact that he was testifying in exchange for a plea bargain in which all but one of the charges were dismissed against him. (*Id.,* pp. 113-18).

Laura Kangas was one of the homeowners whose home was broken into.  Ms. Kangas testified that she did not know petitioner. (*Id.*, p. 136).

Dan Kuhn was a Saginaw police officer who spoke to Amanda Nickles on the day of one of the home invasions.  Officer Kuhn obtained information from Ms. Nickles about a license plate of the suspect vehicle.  Officer Kuhn determined, after doing some manipulation of the license plate number, that the vehicle was owned by Ms. Mazur's relative. (Tr. 4/24/09, pp. 44-54).  On cross-

---

[2]   Respondent did not file the trial transcripts when he filed his motion for summary judgment or the supplemental answer in this case.  However, respondent did file the trial transcripts and other Rule 5 materials in petitioner's earlier case. See *Meador v. Rapelje,* No. 5:12-CV-10460 (Dkt. # 5).  Rather than ordering the respondent to resubmit these materials under Case # 14-12760, this Court will review the transcripts that were filed under Case # 12-CV-10460.

examination, Officer Kuhn testified that Ms. Mazur informed him that petitioner was not at her house on the day of the home invasion of the Rodriguez house. (*Id.,* p. 54-55).

Chad Brooks testified that he was a police officer for the Saginaw Township Police who had investigated petitioner's prior 2006 attempted home invasion conviction. (*Id.,* pp. 168-77). On cross-examination, Officer Brooks admitted that he had no actual contact with petitioner at the home where the home invasion took place. Officer Brooks also acknowledged that petitioner had no firearm in his possession when he was arrested for that home invasion. (*Id.,* p. 177).

It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)(denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F. 2d 1275, 1281 (6th Cir.1988)(citing *Weatherford*). "It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably." *Weatherford v. Bursey*, 429 U.S. at 559. A claim that a prosecutor violates a state discovery rule requiring the state to disclose the names of

14

witnesses it reasonably anticipates calling is not cognizable on federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 416, 439-41 (6th Cir. 2001), *opinion corrected on denial of reh'g*, 307 F.3d 459 (6th Cir. 2002). Moreover, a decision regarding the endorsement of a witness generally constitutes a state law matter within the trial court's discretion. *See Hence v. Smith*, 37 F.Supp.2d 970, 982 (E.D.Mich.1999) (citing cases); *Whalen v. Johnson*, 438 F.Supp. 1198 (E.D.Mich.1977)(it is not a fundamental error to permit a prosecutor to endorse a witness during trial even though the prosecutor had previously filed an affidavit stating that the witness was not material).

In the present case, none of the witnesses were a surprise to petitioner. Mr. Santoya had been one of petitioner's co-defendants. Ms. Kangas was one of the homeowners of one of the homes that had been broken into. Officer Kuhn was an investigating officer of one of the home invasions. Petitioner was placed on notice a year earlier that the prosecution intended to call Officer Brooks to testify about petitioner's prior attempted home invasion conviction as a prior bad act.

The late endorsement of these four witnesses did not violate petitioner's due process rights, because petitioner should have reasonably anticipated their testimony, in light of the evidence and the additional discovery in this case. *See*

15

*e.g. Warlick v. Romanowski*, 367 F. App'x. 634, 643–44 (6th Cir. 2010).

Additionally, petitioner was not prejudiced by the decision to allow these

witnesses to testify because he had ample opportunity to cross-examine these

witnesses and bring out any inconsistencies in their testimony and/or their

motivations for testifying. *Id.* at 644.

　　　　Petitioner alternatively claims that trial counsel was ineffective for failing to

object to the untimely amendment of the witness list.

　　　　To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test.  First, the

defendant must demonstrate that, considering all of the circumstances, counsel's

performance was so deficient that the attorney was not functioning as the

"counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466

U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id.*  In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be sound

trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that

such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the

defendant must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Petitioner's trial counsel did not appear surprised by these witnesses and as mentioned above, ably cross-examined them. A habeas petitioner must show that he was prejudiced by trial counsel's failure to object to an alleged discovery violation in order to obtain relief on an ineffective assistance of counsel claim. *See Wickline v. Mitchell*, 319 F.3d 813, 822 (6th Cir. 2003). Because trial counsel did not appear to be surprised by the substance of these witnesses' testimony, petitioner was not prejudiced by counsel's failure to object to the late amendment of the witness list. *See Pitts v. Hopper*, 402 F. Supp. 119, 123 (N.D. Ga. 1974). Moreover, in the absence of any showing on how any of these witnesses' testimony could have been countered, counsel was not ineffective for objecting to the amendment of the witness list or for failing to move for a continuance. *See Tamez v. Dir., TDCJ-CID*, 550 F. Supp. 2d 639, 654 (E.D. Tex. 2008). Petitioner is not entitled to relief on his first claim.

**B.  Claim # 2.  The delay in arraignment/ineffective assistance of trial counsel claim.**

Petitiner next contends that the 144 hour delay between his detention after a warrantless arrest and his arraignment on the warrant violated his Fourth Amendment rights under the U.S. Constitution. Petitioner further contends that

17

trial counsel was ineffective for failing to object to the pre-arraignment delay.

Petitioner's delay in arraignment claim is barred from review under the *Stone v. Powell* doctrine. The Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention. *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975).

However, a federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis*, 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).

18

Petitioner raised his Fourth Amendment claim in his post-conviction motion; Petitioner had a full and fair opportunity to raise this Fourth Amendment claim in the state courts. *See Villafuerte v. Stewart,* 111 F. 3d 616, 627 (9th Cir. 1997). Petitioner is not entitled to habeas relief on his claim.

Petitioner alternatively claims that trial counsel was ineffective for failing to object to the pre-arraignment delay.

Petitioner's claim is based on the United States Supreme Court's decision in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). *Riverside* was a civil rights case brought under 42 U.S.C. § 1983. The Supreme Court held that the federal constitution requires that a defendant be given a reasonably prompt probable cause determination, such as arraignment, following his arrest, and that a delay in arraignment greater than 48 hours after arrest is presumptively unreasonable. *See id.* at 55-58.

The only evidence that petitioner claims was obtained by the police as a result of the pre-arraignment delay was his statement that he made to the police following his detention, in which he referred to some of the gold coins stolen during one of the robberies. Its worth noting that petitioner was arrested at 12:50 p.m. on March 11, 2008 and made his statements to the police less than two hours later at about 2:18 p.m. (Tr. 4/24/09, pp. 196-201, Tr. 4/29/09, pp. 55-56).

19

Petitioner failed to show that his statement was procured as the result of an undue delay.

Moreover, even if there was an unreasonable delay in arraignment, petitioner cannot show a reasonable probability that a motion to suppress his statements on this basis would have been successful. Because *McLaughlin* was a civil rights action, it did not consider the effect of pre-arraignment delay on the voluntariness of a statement made to the police. *See Davis v. Jones,* 306 F. App'x. 232, 236 (6th Cir. 2009). The United States Supreme Court, in fact, explicitly declined to fashion an appropriate remedy for a *McLaughlin* violation. S*ee Powell v. Nevada*, 511 U.S. 79, 84 (1994). The Michigan courts likewise held that suppression of a statement is not *per se* required for a *McLaughlin* violation. *See People v. Manning*, 243 Mich.App. 615, 636-44; 624 N.W. 2d 746 (2000). Under both federal and Michigan law, any unnecessary delay in having a defendant arraigned before a magistrate or other judicial officer is insufficient, in and of itself, to justify the suppression of an otherwise voluntary confession made during the period of the pre-arraignment delay; instead, delay is only one of several relevant factors to be considered in determining the voluntariness of a criminal defendant's statements. *See United States v. Christopher,* 956 F. 2d 536, 538 (6th Cir. 1991); *People v. Cipriano,* 431 Mich. 315, 319; 429 N.W. 2d 781 (1988). If

20

the totality of the circumstances indicate that a confession was voluntarily given, it should not be excluded solely because of pre-arraignment delay. *Cipriano,* 431 Mich. at 319.

The totality of circumstances indicate that petitioner's statement to the police were voluntary, in spite of the alleged pre-arraigment delay, because there is no allegation that petitioner was not advised of his *Miranda* warnings, and there is no evidence of intimidating police conduct, that the police interview was coercive, or that petitioner was otherwise harassed or mistreated. *Christopher,* 956 F. 2d at 539. Because the totality of the circumstances indicate that petitioner's statements were voluntary, counsel was not ineffective for failing to move to suppress petitioner's statements because of the pre-arraignment delay. *See Davis,* 306 F. App'x. at 237-39 (counsel not ineffective for failing to seek suppression of petitioner's statement based on a 96 hour delay between the arrest and arraignment when the other factors established that the statement was voluntary). Petitioner is not entitled to relief on his second claim.

**C. Claim # 3. The ineffective assistance of appellate counsel claim.**

Petitioner lastly contends that appellate counsel was ineffective for failing to raise his first two claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective

21

assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court has already determined that petitioner's first and second claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in failing to raise these claims on petitioner's appeal of right. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. [3]

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims.  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

<u>s/John Corbett O'Meara</u>
United States District Judge

Date:  October 20, 2016

---

[3]  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, October 20, 2016, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager